# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:04cv214

| | |
|---|---|
| RAM MOUNTAIN CONTRACTING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| JAMES R. HODGSON, JR.; JAMES A. FRIAS; ) | |
| RAM MECHANICAL, INC.; and HODGSON- ) | |
| FRIAS ENTERPRISES, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the court upon the following motions:

(1) Defendants James A. Frias's, Ram Mechanical, Inc.'s, and Hodgson-Frias Enterprises, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(2);

(2) Defendants James A. Frias's, James R. Hodgson, Jr.'s, Ram Mechanical, Inc.'s, and Hodgson-Frias Enterprises, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(3); and

(3) Defendants James A. Frias's, James R. Hodgson, Jr.'s, Ram Mechanical, Inc.'s, and Hodgson-Frias Enterprises, Inc.'s Alternative Motion for Transfer of Venue to the United States District Court for the Eastern District of California.

Having carefully considered the pending motions, plaintiff's response, and defendants' reply, the court enters the following findings, conclusions, and Recommendation.

# FINDINGS AND CONCLUSIONS

I.  **Background**

This is a diversity action filed in this court pursuant to 28, United States Code, Section1332. The action concerns alleged breach of fiduciary duty, disloyalty, and misappropriation by the defendants of plaintiff's assets and business opportunities in California. Plaintiff is a North Carolina corporation that is engaged in the business of industrial contracting in other states, including California. The individual defendants are former officers and employees of the plaintiff, and the corporate defendants are enterprises formed by such employees during the term of their employment with plaintiff. Further, it appears from the allegations of the Complaint that Defendant Hodgson, as a minority owner, owns nearly half of the common stock of the corporation that owns plaintiff. While impacting a North Carolina corporation, all of the alleged misconduct of defendants appears to have occurred in California.

Defendants, who are individual and corporate residents of the State of California, have moved to dismiss contending that this court lacks personal jurisdiction over them and that venue is improper in this district. In the alternative, defendants have requested that this matter be transferred to the Eastern District of California.

II. **Standard**

Defendants have moved for dismissal pursuant to Rule 12(b), Federal Rules of Civil Procedure, contending that personal jurisdiction is lacking and that the Western District of North Carolina is not a proper venue for resolution of this dispute. Rule 12(b) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding.

Id., at 1832 (citation omitted). While the court accepts factual allegations in the complaint as true and considers the facts in the light most favorable to the plaintiffs in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000). For the limited purpose of ruling on defendants' motions, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to plaintiff.

### III.     Motion to Dismiss Based on a Lack of Personal Jurisdiction

Defendants James A. Frias, Ram Mechanical, Inc., and Hodgson-Frias Enterprises, Inc., contend that the action should be dismissed because they do not have the requisite minimum contacts with the State of North Carolina that would justify the exercise of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The court notes that Defendant Hodgson has not joined in this motion, and the court has assumed that he, as a former officer of plaintiff and a minority shareholder of the company that owns plaintiffs, would have minimum contacts with this forum. Reference to "defendants" in discussion of this particular motion will exclude Defendant Hodgson.

#### A.     Framework for Considering Personal Jurisdiction

At the constitutional level, whether or not to exercise jurisdiction over a defendant is a question of fairness. International Shoe Co. v. Washington, 326 U.S. 310, 317-20 (1945). However, determining what is fair requires review of the quantity and quality of the defendant's contacts with the forum state. Perkins v. Benquet Mining Co., 342 U.S. 4376 (1952). Constitutional concerns only arise where jurisdiction is allowed pursuant to a state's

long-arm statute. As the Court of Appeals for the Fourth Circuit has stated:

> [W]hen evaluating the propriety of jurisdiction obtained pursuant to a long-arm statute, a two-step analysis is normally required. First, we must determine whether the statutory language applies to the defendant; second, if the statutory language applies, we must determine whether the statutory assertion of jurisdiction is consistent with the due process clause of the Constitution.

English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (citation omitted).

### B. North Carolina's Long-Arm Statute

In considering defendants' Motion to Dismiss, analysis begins with the two-step approach furnished by the circuit court. The North Carolina Supreme Court has held that the state's jurisdictional statute applies to a defendant who meet the minimal contacts requirement of International Shoe Co. v. Washington, supra. See Dillon v. Numismatic Funding Corp., 291 N.C. 674 (1977); see also Western Steer-Mom & Pops v. FMT Invs., Inc., 578 F. Supp. 260, 264 (W.D.N.C. 1984). The two-pronged approach approved by the circuit in English & Smith therefore "collapses into the question of whether (the Defendants have) the minimum contacts with North Carolina." Fieldcrest Mills, Inc. v. Mohasco Corp., 442 F. Supp. 424, 426 (M.D.N.C. 1977).

### C. Minimum Contacts

There are five factors used in determining whether minimum contacts with North Carolina have been satisfied:

(1) quantity of the contacts;

(2) nature and quality of the contacts;

(3) source and connection of the cause of action to the contacts;

(4) interest of the forum state; and

(5) convenience.

Western Steer-Mom & Pops v. FMT Invs., Inc., supra, at 264; see Fieldcrest Mills, Inc. v.

Mohasco Corp., supra, at 427; see also N.C. Gen. Stat. § 1-75.4(5) (North Carolina long-arm statute). The burden is on plaintiff to establish that minimum contacts have been established for the exercise of jurisdiction over these defendants. Marion v. Long, 72 N.C. App. 585, cert. denied, 313 N.C. 604 (1985). The materials and arguments submitted by plaintiff and defendants will be reviewed in light of the five considerations found in Western Steer-Mom & Pops v. FMT Invs., Inc., supra, *seriatim*.

1. **Quantity of Contacts**

Plaintiff has submitted its responsive brief which has annexed the affidavits of Danny C. House, Larry Gossett, and Pat Mendock; defendants have also submitted briefs which have annexed the affidavits of each defendant. To summarize, it appears that plaintiff has at all relevant times been the employer or former employer of Defendant Frias; that Defendant Frias was at all relevant times engaged in plaintiff's business in California and neighboring states and supervised by Defendant Hodgson in California; that Defendant Frias avers that he never contacted plaintiff or its officers or employees in North Carolina except by telephone, and never received instruction from anyone in North Carolina (Frias Affidavit, at ¶ 3); the plaintiff's evidence indicates Frias had three to five telephone contacts with it per year from California (Mendock Affidavit, at ¶ 4(b)); that Defendant Frias further avers that he never performed services in North Carolina (Frias Affidavit, at ¶ 4); that his compensation was paid through a California bank (Frias Affidavit, at ¶ 4); that Defendant Frias had visited North Carolina on two occasions, but on those occasions never engaged in company business (Frias Affidavit, at ¶ 4); and that all of the conduct of which plaintiff complains (and which defendants deny) allegedly occurred in the State of California.

While plaintiff's affidavits show that unilateral management and administrative support was rendered in North Carolina to Defendant Hodgson in furtherance of the

5

plaintiff's corporate activities in California, the only contact plaintiff apparently had with Defendant Frias was the unilateral issuance of compensation to him in California, all through checks issued upon a California bank account. Unilateral contact by a plaintiff with a non-resident defendant cannot satisfy the requirement of contact with the forum state. Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448 (4th Cir. 2000).

The North Carolina long-arm statute specifically requires "substantial activity" *by the defendant* within the proposed forum state. N.C. Gen. Stat. Section 1-75.4(d) (1989). Likewise under federal due process analysis, where specific jurisdiction cannot be asserted and plaintiff attempts to assert general jurisdiction over a defendant for acts that did not occur in the forum state, plaintiff's burden is to show "systematic and continuous contacts" by the defendant with the forum state. Helicopteros Nationales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). The evidentiary material submitted shows that Defendant Frias visited North Carolina on two occasions, and that on neither occasion did he engage in business. Frias Affidavit, at ¶ 4. As to the corporate defendants, there are simply no allegations of any contact with this state. There are allegations that the corporations are alter-egos of the individual defendants, but no proof of such has been presented. House Affidavit, at ¶¶ 5(h) & 6(g). At most, plaintiff is alleging that it was the acts of these defendants in California that were intended to harm and did harm a North Carolina corporation, which had property and did business in California and other states other than North Carolina.

### 2. Nature and Quality of the Contacts

Contacts with a state should be viewed together, not in isolation. Hirschkop & Grad, P.C. v. Robinson, 757 F.2d 1499, 1503 (4th Cir. 1985). Viewed together, Defendant Frias's contacts with North Carolina do not indicate a relationship to this litigation.

### 3. Source and Connection of the Action to the Contacts

There is no nexus between the contacts and the source of action.

### 4. Interest of the Forum State

The intent of the North Carolina long-arm statute is to assert *in personam* jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution. Kaplan School Supply Corp. v. Henry Wurst, Inc., 56 N.C. App. 567, cert. denied, 306 N.C. 385 (1982). There is a mandate that the North Carolina long-arm statute be given liberal construction, thereby favoring the finding of personal jurisdiction. F.D.I.C. v. Kerr, 637 F. Supp. 828 (W.D.N.C. 1986). As exhibited in the long-arm statute, North Carolina has a substantial interest in the execution of contracts within this state, promises of services to be rendered in this state, solicitation of business within the state, and goods or intellectual property being licensed or sold to corporate residents of the state. See N.C. Gen. Stat. §§ 1-75.4(5)(a), et seq. On the other hand, North Carolina would *not* have a substantial interest in contracts executed in California, promises of services to be rendered in California, solicitation of business in California, and sales to corporate residents of California.

### 5. Convenience

Inasmuch as all of the alleged wrongful conduct occurred in California and the witnesses, including businesses who may have formerly dealt with plaintiff but now deal with defendants are located in California, it appears that California would be a much more convenient forum for the resolution of this action. Certainly, this will increase costs for plaintiff, but it would appear based on the affidavits submitted that it has substantial gross revenue (approximately $11,000,000.00) and can bear such expense. The affidavits of the defendants indicate that 90 percent of the witnesses involved in this case reside in California. Frias Affidavit, at ¶ 31. Defendant Hodgson avers that the number of witnesses in California

would exceed 50.  Hodgson Affidavit, at ¶ 4.

**D.     Conclusion**

Ultimately, the question of whether to exercise this court's general jurisdiction can best be answered by asking whether exercise of such jurisdiction would "offend 'traditional notions of fair play and substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The question is not whether the contacts predominate, but whether "enough minimum contacts exist that the district court's assumption of . . . jurisdiction satisfied due process."  English & Smith v. Metzger, supra.

The "fair warning" requirement is satisfied if the defendants have "purposefully directed" their activities at residents of the forum, and the litigation results from the alleged injuries that "arise out of or relate to" those activities.  Burger King Corp. v. Rudzewicz, supra, at 472.  As discussed supra, the alleged injuries complained of by plaintiff arose from alleged activities of defendants in California, with no activities in North Carolina.  The activities alleged to have occurred in California would not have led defendants to "reasonably anticipate being haled into court" in North Carolina.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).   Therefore, the undersigned determines that this court lacks specific as well as general jurisdiction over the moving defendants and that the exercise of such jurisdiction would offend traditional notions of fair play and substantial justice.  Defendants motion is well taken and will result in an alternative recommendation that they be dismissed from this litigation; however, dismissal of some defendants while retention of the action as to Defendant Hodgson would result in piecemeal litigation, undue expense to all parties, and unnecessary duplication of efforts by two federal courts at taxpayer expense.  As discussed below, the undersigned will recommend that this action be transferred to the

Eastern District of California.

## IV. Motion to Transfer Venue

The undersigned has also considered defendants James A. Frias's, James R. Hodgson, Jr.'s, Ram Mechanical, Inc.'s, and Hodgson-Frias Enterprises, Inc.'s Alternative Motion for Transfer of Venue to the United States District Court for the Eastern District of California. While the Western District of North Carolina is an appropriate venue for this action, as discussed below, defendants motion to transfer is well taken inasmuch as this district lacks personal jurisdiction over three of the four defendants as well as other factors.

Transfer is governed by 28, United States Code, Section 1404(a), which reads as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The defendants' request for transfer satisfies the requirements of <u>Jim Crockett Promotions, Inc. v. Action Media Group, Inc.</u>, 751 F. Supp. 93 (W.D.N.C 1990), which establishes a litany of considerations applicable to any motion to transfer. In order to determine whether transfer is proper, a balance must be struck between competing interests and, unless the balance is tipped strongly in favor of the moving party, <u>Collins v. Straight, Inc.</u>, 748 F.2d 916, 921 (4th Cir. 1984), plaintiff's choice of forum should not be disturbed. Upon a motion to transfer, the <u>moving</u> party carries the burden, 1A Moore's Federal Practice, para. 0.345[5] at 4360 (Matthew Bender 1990); and the burden is heavy. <u>Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.</u>, 719 F. Supp. 446, 451 (W.D.N.C. 1989).

> A defendant carries a particularly heavy burden when it moves pursuant to [Section] 1404(a) to transfer an action from a district where venue is proper. As this court has noted previously, it is "black letter law," that "plaintiff's

choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed."
Phillips v. S. Gumpert Co., Inc., 627 F. Supp. 725, 726-27 (W.D.N.C. 1986) (citations omitted) (quoting Western Steer Mom 'N' Pop's v. FMT Invs., Inc., 578 F. Supp. 260, 265 (W.D.N.C. 1984)). The relevant factors are:

1. the plaintiff's initial choice of forum;
2. the residence of the parties;
3. the relative ease of access of proof;
4. the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. the possibility of a view;
6. the enforceability of a judgment, if obtained;
7. the relative advantages and obstacles to a fair trial;
8. other practical problems that make a trial easy, expeditious, and inexpensive;
9. the administrative difficulties of court congestion;
10. the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
11. the avoidance of unnecessary problems with conflict of laws.

Jim Crockett Promotions, Inc., supra. With the exception of inquiry nine, each answer to each inquiry favors transfer of this matter to the Eastern District of California for the following reasons: all defendants are residents of California; all events giving rise to

plaintiff's claims occurred in California; most of the witnesses and proof will be found in California; and compulsory process will be available in California as to witnesses therein residing, i.e., the companies whose business defendants allegedly took from the plaintiff. Indeed, a transfer to California may be in the best interests of the plaintiff. To prove the allegations of the plaintiff's Complaint, including those concerning damages, the testimony of the plaintiff's customers would be required. Those customers are not parties, and therefore beyond the compulsory process of this court, but not that of the California federal courts.

Weighing against transfer is the protection of plaintiff's intellectual property in North Carolina; however, the concepts behind the protections afforded intellectual property are now universal, and a California court can very well apply North Carolina's intellectual property protection laws.

Most importantly, this forum lacks jurisdiction over three of the four defendants and California is the only jurisdiction where all defendants may be properly haled into court without due process concerns. Absent transfer, it is very likely that parallel litigation will occur, which is waste of judicial as well as private resources.

Qualitatively as well as quantitatively, the balance is tipped in favor of transfer. Collins v. Straight, Inc., supra; McDevitt & Street Co. v. Fidelity and Deposit Co., 737 F. Supp. 351, 354 (W.D.N.C. 1990). The undersigned will respectfully recommend that defendants' alternative Motion to Transfer under 28, United States Code, Section 1404(a), be granted.

**V.    Motion to Dismiss for Improper Venue**

Defendants James A. Frias, James R. Hodgson, Jr, Ram Mechanical, Inc., and Hodgson-Frias Enterprises, Inc., have also filed a Motion to Dismiss pursuant to Rule

12(b)(3). Where, as here, no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue, Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988), and plaintiff has satisfied its burden.

Venue is governed by 28, United States Code, Section 1391(a), which provides, in relevant part, as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction . . . if there is no district in which the action may otherwise be brought.

In Mitrano v. Hawes, 377 F.3d 402 (4th Cir. 2004), the Court of Appeals for the Fourth Circuit specifically addressed and discussed the current analysis applicable to venue:

> In 1990, § 1391 was amended to make venue proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." [FN2] Congress amended the statute because the prior language "led to wasteful litigation whenever several different forums were involved in the transactions leading up to the dispute." Under the amended statute, it is possible for venue to be proper in more than one judicial district. We therefore no longer apply the "weight of the contacts" test. Additionally, **in determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review "the entire sequence of events underlying the claim."**
>
> FN2. An action may also be brought in a judicial district where a defendant resides, if all defendants reside in the same state, or where any defendant is subject to personal jurisdiction, if there is no other district in which the action may be brought. See 28 U.S.C.A. § 1391(a). Because Hawes resided in Massachusetts and venue would be proper in Massachusetts, neither provision would provide a basis for venue in Virginia.

Id., at 405(citations omitted; emphasis added). Jurisdiction in this action is founded solely on diversity, making Section 1391(a) applicable.

First, venue is not appropriate in this district under Section 1391(a)(1) because none

12

of the defendants reside in this district. Second, venue is also not appropriate in this district under the first part of Section 1391(a)(2) because a substantial part of the events giving rise to this action did not occur in this district. Third, venue is not appropriate under Section 1391(a)(3) based on the existence of personal jurisdiction as to Defendant Hodgson in this district, inasmuch as venue would be proper as to all defendants in the Eastern District of California.

This leaves for close consideration the second part of Section 1391(a)(2), which allows for venue where a substantial part of the property that is the subject of the action is "situated." The only property that is involved in this matter is plaintiff's intellectual property consisting of trade secrets and a customer list. Plaintiff alleges that it entrusted Defendant Hodgson with such property to use in furtherance of plaintiff's business in California, and that while in California, Defendant Hodgson misappropriated such property for his own personal use.

At its essence, this action concerns the alleged taking by defendants of plaintiff's intellectual property, to wit, trade secrets and customer lists. To determine whether venue in this district is proper under Section 1391(a)(2), the court must first determine where such intellectual property is "situated."

> Since intellectual property cannot have a physical situs the law of the state of residence of the person who initially developed and protected the secret appears to be the obvious starting point for its protection.

Paolino v. Channel Home Centers, 668 F.2d 721, f.n.2 (3rd Cir. 1981). The appellate court in Paolino went on to find that

> Since Pennsylvania law created that property interest that state's interest in protecting the Pennsylvania resident from its willful destruction was clearly and specifically foreseeable. Inducing a Pennsylvanian to entrust that creature of Pennsylvania law to Air Control on a promise of confidentiality, and then misappropriating it, obviously would cause harm in Pennsylvania no matter where the misappropriation occurred. Moreover, since Tennessee and

13

> Pennsylvania both recognize trade secrets, no public policy of the only other state concerned with the transaction will be offended by litigation in a Pennsylvania forum.

Id., at 724 (footnotes omitted). Similarly, the Court of Appeals for the Fourth Circuit found venue was appropriate under the first part of Section 1391(a)(2) where

> the events and facts central to this case concerned [defendant] Jarrard's training, her access to and knowledge of trade secrets, and her job responsibilities, all of which are anchored in Maryland. Moreover, the alleged injuries that Jarrard has caused or threatens to cause were or will be sustained in Maryland.

Ciena Corp. v. Jarrard, 203 F.3d 312, 318 (4th Cir. 2000).

The Complaint makes clear that plaintiff possesses its intellectual property rights in the State of North Carolina. Further, the undersigned finds that intellectual property of a North Carolina corporation, such as trade secrets, is property valued by the State of North Carolina and subject to protections afforded by such state as a matter of law. See "North Carolina Trade Secrets Protection Act," N.C.Gen. Stat. § 66-152. Further, it appears that the protections afforded by North Carolina do not diminish even though it is licensed or used in another state,[1] and that North Carolina is, for all practical concerns, the situs of such intellectual property. Inasmuch as this district would be an appropriate venue under Section 1391(a)(2), the undersigned will recommend that defendants' Motion to Dismiss based on Rule 12(b)(3) be denied.

---

[1] "The existence of a trade secret shall not be negated merely because the information comprising the trade secret has also been developed, used, or owned independently by more than one person, or licensed to other persons." N.C.Gen.Stat. § 66-152.

# RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that in the interests of justice, that defendant James A. Frias's, James R. Hodgson, Jr.'s, Ram Mechanical, Inc.'s, and Hodgson-Frias Enterprises, Inc.'s Alternative Motion for Transfer of Venue to the United States District Court for the Eastern District of California be **GRANTED,** and that this matter be **TRANSFERRED** in its entirety to the Eastern District of California;

**IN THE ALTERNATIVE,** it is respectfully recommended that Defendants James A. Frias's, James R. Hodgson, Jr.'s, Ram Mechanical, Inc.'s, and Hodgson-Frias Enterprises, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(3) be **DENIED**; Defendants James A. Frias's, Ram Mechanical, Inc.'s, and Hodgson-Frias Enterprises, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(2) be **GRANTED** and that the Complaint be **DISMISSED WITHOUT PREJUDICE** as to the plaintiff refiling its action against the defendants in the Eastern District of California.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: Dennis L. Howell
Dennis L. Howell
United States Magistrate Judge